The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you. You can be seated. Mr. Curlett. Good morning, Your Honors, and may it please the Court. My name is Charles Curlett, and with my colleague, Laura Abelson, we represent the appellant, James Owens, in this case. We've divided the issues for the purpose of argument this morning as follows. I will address the issue of limitations and whether Mr. Owens' claim was timely filed, and the issue of Eleventh Amendment immunity of the prosecutors in this case. Ms. Abelson will address the issues of qualified immunity of the police and the police officers, and the sufficiency of the pleading related to the Monell claim. Your Honors, James Owens successfully petitioned the Baltimore City Circuit Court to test evidence from his case pursuant to DNA procedures after serving 20 years in prison for a crime he did not commit. When the blood and semen from the crime scene was tested, and it was hermened that he was not a match, he was granted a new trial. What was the basis of the new trial? The basis of the new trial was the new evidence that was revealed pursuant to the testing of the blood and semen and the lack of the DNA match. By that time, Mr. Owens had already pursued... So it had nothing to do with any of the conduct that you later alleged was the basis for the bad trial. That's correct, Your Honor. And so after his new trial was ordered, there was a year that he sat in prison on the day of his retrial when the state dismissed his case. Now, there's no dispute, I believe, that under Heck v. Humphrey, Mr. Owens is permitted to pursue this claim. The question is whether or not it was timely filed. We contend that Mr. Owens achieved the favorable termination of his criminal proceeding when the case was ultimately dismissed. The state has argued that Wallace v. Cato controls and that the criminal proceeding terminated in his favor when a new trial was ordered. In order to resolve that question, we turned first to the Supreme Court case law. In Heck v. Humphrey, the Supreme Court was confronted with a very discreet and problematic issue. And that was, what do you do when a defendant is incarcerated and has a 1983 claim? And the 1983 claim could impugn the integrity of the underlying conviction. And to resolve whether or not he would be required to file a claim and then a district court would have to stay the claim while the criminal proceedings continued, the court resolved the issue by stating that a 1983 claim is not cognizable until an incarcerated defendant achieves a favorable termination and that any claim he files that challenged the fact of his conviction or his incarceration would be construed as a habeas claim. Now, in Wallace v. Cato, That was a false imprisonment case? It was not, Your Honor. I'm sorry, in Wallace v. Cato, which was a false imprisonment case, the Supreme Court carved out a very narrow exception, if you will, in stating that in a case of false imprisonment and false arrest, that the cause of action accrues when the defendant is bound over for trial. And that's an example of a case where the 1983 claim would not run the risk of undermining the criminal conviction. There are many such cases where police officers use excessive force, for example. And you can bring a 1983 claim to allege a constitutional violation on those sorts of grounds. But when you have a 1983 claim that goes to the heart of the criminal conviction itself, it is the criminal proceedings that must be terminated before the cause of action will be cognizable. Now, in one of the cases that was raised by both sides in this case, in the 28J letter, was the Second Circuit's en banc decision last week in Poventude v. the City of New York. Now, that case, the Second Circuit tried to do something novel and very tricky. They tried to walk a line between what it called a Brady claim and what it called a malicious prosecution claim. And trying to find where that line is drawn is a difficult one, and it's the reason it's a 159-page opinion with only a 37-page majority opinion. The dissents and the concurrences debated this issue at length. And ultimately, what the court was trying to remedy is a situation where you have a Brady violation occurs, the Brady violation is discovered, the evidence that was withheld is turned over, a new trial is ordered, and therefore the balance of the universe in criminal justice has been restored prior to the subsequent proceeding. And if the procedure lines up so neatly, that makes sense. But in this case, as in so many cases, as in what the courts have generally called those analogous to malicious prosecution claims, it's not so neat. And the reason is that when the subsequent trial is going to take place, any 1983 claim would, a fortiori, serve to challenge the integrity of that criminal conviction. And that's the issue that the Second Circuit struggled with. And in that case, they cite a prior case from 2006, de Blasio versus the City of New York, which it said was rightly decided. And in de Blasio, which it viewed as a malicious prosecution claim, which is what Mr. Owen's claim is, they said that there he got the reversal of his conviction, the vacater from the habeas proceeding by the federal court, the new trial was granted, and ultimately he was convicted of a lesser charge in the new trial. And the court viewed that the reversal of the original conviction was a contingent result, not a final result. The final result doesn't arrive until the criminal proceedings are over. And that's what we have here. After Mr. Owen's new trial was granted, the state indicated its intent that it would continue to prosecute him. The evidence that was at issue was going to be used again. And trying to draw this line between, well, here you have a pure Brady claim as opposed to a malicious prosecution claim is a difficult one to draw. And the Second Circuit relied on the procedure. If the case is overturned on Brady grounds and the new trial is granted and the balance of justice is restored, then you can draw an earlier line of demarcation for when the claim would accrue, whether or not Heck would serve as a bar. Povented wasn't concerned directly with the accrual issue, but it follows naturally. Let me ask you this question while you're taking a breath. Thank you. When did you learn about the alleged perjury or incentives that have been given to these witnesses? That is a question that we have done our best to ascertain the answer to, and it is murky. We have gone back and talked to the lawyers that represent it. Is it murky about when the plaintiff learned about it? It is. If you look at the record before this court, and you look specifically at the decision by the Court of Special Appeals denying Mr. Owen's appeal, it is evident from that decision that the court had the information about the prior statements that James Thompson had made when he was coerced by the police and confronted and led bit by bit as the police presented him with additional evidence so that finally he would produce a statement that fit the prosecution's theory of the case. Now, the appeal was not on Brady grounds. The appeal was brought on the basis of new evidence having been discovered, and that new evidence was... You're not able to give me even a month and a year. I'm not, Your Honor. And having gone back and interviewed the attorneys who represented Mr. Owens in these earlier proceedings, it appeared that it took place over a period of time. Some of the information had been learned by the time the case got to the Court of Special Appeals, but the Court of Special Appeals' decision makes no mention of, for example, the jailhouse informant who claimed that a statement... But you haven't been able to take the deposition of any of the witnesses on the other side who were purportedly doing these things, correct? Well, that is... Revealing this information. That's correct, Your Honor. And you've pled that you didn't have it in a timely manner. And every court that has considered it said, it's totally, you made this up. And you can absolutely understand this is a fanciful argument. We think it's even less, more than fanciful. So all you have is, I guess your witnesses don't remember anything. Is that what you're telling me? Well, the state's case was based on the testimony of two witnesses. What does your client tell you? Did you talk to your client? Well, I do talk to my client, Your Honor. He can't tell you a response to the Chief Judge's question. Is that right? He can't tell you when they knew about this other stuff. Respectfully, Your Honor, my client, having spent 20 very difficult years in prison, is an angry and jaded and aggrieved man. And asking him to recall the particulars of the flow of information, the discovery of facts over years of litigation is too significant a burden for him to bear. Well, you might inform him that if this case goes forward, he sure as heck is going to be deposed. So he's going to have to come forward with it at some point. Your Honor, we look forward to taking discovery in this case. And we certainly hope to get to that point. Well, it doesn't sound like he looks forward to being discovered. Well, we'll cross that bridge when we come to it, Your Honor. Let me just ask a quick question. Yes, Your Honor. Was Owens held over pursuant to the original indictment, or was he re-indicted? He was held over pursuant to the original indictment. So the criminal proceeding was continuing. And the reversal of his original conviction and the ordering of a new trial was one procedural event along the continuum of that criminal proceeding. So the fact of the matter is this case falls very squarely in the case that the courts have said are analogous to malicious prosecution claims. He has maintained his innocence. He has alleged bad faith and misconduct on the part of the police. And it is not simply an inadvertent or good faith, failure to disclose Brady evidence that was left in a file. This is a continuum of conduct that infected these proceedings until the dismissal was finally granted. And that is when his cause of action accrued, and that is why his claim was timely. On the issue, Your Honor, of the state's 11th Amendment immunity, I'll begin with the case cited by the state in the 28J letter that it filed yesterday of Nevins v. Gilchrest. The state asks the court to consider that case for the proposition that this court has previously looked to North Carolina and said that a district attorney... I see that my time is up, Your Honor. I can proceed with this argument or... Let's go ahead here. Let's go on to the next person. All right. Thank you, Your Honor. Ms. Abelson. Good morning, Your Honors. The individual police defendants in this case should not be granted qualified immunity because it would have been clear to any reasonable police officer in 1987 and 1988 that he had a duty to turn over exculpatory evidence to the prosecutors. Is it a Brady violation? It is a... That is a question, Judge Winn. It is a Brady-type violation. In this case, there was evidence held. Although Brady does apply specifically to the prosecutors, the question is whether the withholding of evidence can also be imputed directly to the police. And so, therefore, it's not specifically a Brady violation, but it is a similar violation to a Brady violation. What's the constitutional violation? The constitutional violation would be to Mr. Owens' due process rights to a fair trial to have the information. So, like Brady. But one of the questions here is whether or not the police officers had to have acted in good faith or in bad faith in order to have a violation, as this court suggested in the second Jean decision. And I would submit that... The concurrence in the second Jean decision. Yes. Yes, Your Honor. The concurrence in the second Jean decision. And in the second Jean... And I would submit that the court does not need to revisit that issue of good faith or bad faith because in this case, Mr. Owens has pled bad faith. He's pled that the individual police defendants deliberately coerced the key witness, Mr. Thompson, into changing his story multiple times in order to fit the other evidence in the case and to secure Mr. Owens' conviction. They knew that Mr. Thompson had given inconsistent statements and they deliberately withheld the information from the prosecutor with the purpose of preventing Mr. Owens from effectively cross-examining Mr. Thompson with it. The individual police defendants are not entitled to qualified immunity because in 1987-1988, it was clear that withholding such exculpatory evidence purposefully would violate the due process rights of a criminal defendant. It's beyond debate that the officers' conduct was unconstitutional. After Barbie v. Warden in 1964, this court held that the police withholding evidence from the prosecutor would jeopardize the conviction of a criminal defendant, that it would contribute to the Brady violations of the prosecutors. And therefore, at that point, police officers were on notice that that conduct was impermissible. The purpose of qualified immunity is to protect... So what was the conduct here? Was it the fact that they heard multiple versions and only gave the last version? Yes, Your Honor. The fact that they fed Mr. Thompson facts to elicit a final version of his testimony that would conform to the rest of the evidence in the case and then did not provide the prosecutor and therefore Mr. Owens' counsel with the previous inconsistent statements. And had it already been testimonied by Mr. Thompson before they did this multiple version? I thought that either the prosecutor had interviewed or talked to him before, found out there were some inconsistencies, and then he asked for more? Yes, there actually are two interrogations that are at issue here in terms of withholding the impeachment evidence. The first is that when Mr. Thompson was initially interviewed by the police after he came forward with the alleged murder weapon in his effort to receive the reward, there were inconsistent statements given then, and then there were additional inconsistent statements given during the trial. And Mr. Thompson came back and testified a second time in Mr. Owens' trial that he was ready to tell the truth, that he was coming forward because he had had some epiphany that made him ready to tell the truth and gave a second version, which was actually the seventh version of these facts that Mr. Thompson gave to the police in this case. The purpose of qualified immunity is to protect government actors who unknowingly violate the Constitution. And so therefore the question should be whether the officer knew his conduct was unconstitutional and not whether he knew he could be sued for damages for that unconstitutional conduct. And what must be clearly established is the criminal defendant's right to the disclosure of the exculpatory evidence, not his right to sue under Section 1983 for the failure to disclose the evidence. There's no public policy justification for protecting officers from liability where they broke the rules to convict someone we now know was innocent, as we do in this case. Does the right for disclosure arise from Brady, or is there an independent constitutional basis that gives the defendant a right to disclosure? It would be the same constitutional basis on which Brady was founded, which is that the criminal defendant has a right to exculpatory evidence in order to protect his due process rights. It doesn't necessarily arise, well… Without Brady, does it exist, is what I'm asking? That a criminal defendant has a right to have material disclosed to him that's exculpatory? Yes. Without Brady, yes, Your Honor. Without Brady, it would not exist. So this is a Brady violation that you're saying it is? Yes. And you're saying that applies to police officers? Yes, Your Honor. We're asking the court to definitively hold that the… The question is not, what should we make the law today? The question is, was that clearly established when these events occurred? Yes, Your Honor. It was clearly established. It sounds to me like you're making an argument, this would be a good idea, you ought to hold this. Might be. No, it was clearly established after the Barbie case. After Barbie. Well, when they had Gene, and I didn't mean to cut you off, when the full court heard this issue in Gene 2, a majority did not embrace the holding in Barbie. Is that an accurate statement? Yes, Your Honor. That is an accurate statement. I don't know that that is an accurate statement, because it seemed to me that even the concurrence, which was not enthusiastic about imposing liability or recognizing a cause of action against police officers, distinguished whether there would be a cause of action if the police officer acted in bad faith or not and said that there's no cause of action here or there's no 1983 recovery here because there's no allegation of bad faith. Yes. But it didn't undo, and maybe it couldn't undo, it had no occasion to undo what Barbie had said. So Barbie was the law when this activity took place. Yes, Your Honor. And all 12 judges of this court acknowledged in the second Gene opinion that a cause of action could lie for the officers withholding evidence in bad faith, including the concurrence. The appellees would have this court adopt a constitutional, adopt a rule that no constitutional right can be clearly established until this court held that a state actor could be held liable for the conduct.  What is relevant here is that a police officer, I see my time has concluded. You can finish up, wrap up. Should I move on to the Monell issue or would Your Honors prefer that I conclude? No, if you finish your statement, you'll have some time in reply. Let me hear from Mr. Beck, please. Thank you, Your Honors. Thank you. Mr. Beck, you're in the city solicitor's office? That's correct, Your Honor. And I represent the individual police officer. Ms. McDonald, where is she? Is she in the attorney general's office? That's correct. So the attorney general is one of the lawyers that's representing your clients, right? One of the lawyers representing the defendants in this case. They're representing the state's attorney's office, and they're also representing Marvin Brave, the prosecutor in this case. I'm representing the individual officer defendants, Gary Dunnigan, Jay Lansman, and Thomas Pellegrini, as well as the Baltimore Police Department. Are you dividing your argument as well? Yes, Your Honor. I'll be addressing the argument with respect to limitations as well as the arguments with respect to qualified immunity for the Baltimore police officers and the Monell argument with respect to the Baltimore Police Department. Your Honor, the district court in this case. I'm sorry, what is your co-counsel going to be? She will be addressing the state's attorney's office, the Eleventh Amendment immunity issue, as well as absolute immunity, and I think those are the two issues she's addressing. Your Honor, the district court in this case should be upheld for several reasons with respect to the claims against the individual officer defendants as well as the Baltimore Police Department. First and foremost, Mr. Earle's claim is barred by the applicable statute of limitations in this case. In Heck v. Humphreys, what the court held was that When he was ordered a new trial, he was still being held pursuant to the original indictment, and he was not being indicted. That's correct. That's correct, Your Honor. And that's consistent with what happened in Wallace v. Cato where the person was still facing the same criminal charges on the same case. He was contesting an issue that didn't undermine the validity of any conviction at that point because no conviction existed. What was the basis for the new trial being awarded in this instance? In this case, the new trial was awarded based on newly discovered DNA evidence, which goes to the concurrence in Gene v. Collins, which said Can we stick on this first issue for just a moment? Because I thought it was pretty clear to bring a 1983 action that's like a malicious prosecution action to have the elements of the malicious prosecution action established. And the element of a final determination in your favor wasn't established until the null process was taken by the state's attorney's office. Isn't that right? Well, with respect to the malicious prosecution claim, to assert a malicious prosecution claim in this court, the court has determined that that is a Fourth Amendment-type case in which it incorporates some but not all of the elements of malicious prosecution. So you don't think you have to have a final determination in your favor in order to bring a 1983 malicious prosecution claim? If you brought one under the Fourth Amendment, which the plaintiff didn't hear. The plaintiff has only brought a case in this case under his Sixth Amendment right, which he admits on brief against the individual officers for failure to disclose impeachment and exculpatory information. The plaintiff has not asserted a Fourth Amendment-type claim, which would be a malicious prosecution claim. In this case, that makes it factually distinguishable because what he's asserting is that... All the argument was about malicious prosecution claims and malicious... With respect... You know, the other side gets a chance at this. Right. And you're telling me that they don't make a malicious prosecution claim. Not under the Fourth Amendment, not against the Baltimore Police Department, and not against the individual officer defendants. Both of their claims sound in Brady under the Due Process Clause. And what the court said in... There's much more in their complaint than simply Brady. Brady is the failure to disclose, but the allegations go far beyond a failure to disclose. There's actual intentional conduct that's being alleged here and conduct that goes to the very heart, particularly with the prosecutor and knowing that the defendant, that Thompson is lying, soliciting information and hearing different versions of it and choosing a particular one, ones to go forward on. I mean, there's something... This is not just, I have something exculpatory and I didn't disclose it. It is some action on behalf of the prosecutor and the officer, at least in terms of the allegations that is being made here that said you did something and you did it intentionally in bad faith. Correct. That's a little more than Brady, don't you agree? As to their claims? A little bit more than Brady, but they've argued it as strictly Brady. What they've argued is as to the Baltimore Police Department, in their reply brief, I believe it's page 35... Are we tied to the argument or are we tied to the allegations that they make to determine what the claims are here? Well, I think the court is... Well, as to the allegations, they didn't bring to the specific defendants their masters of their complaint. So they can bring the cause of action that they choose to bring against the defendants which they choose to bring it. As to the Baltimore Police Department, they chose to bring, and the individual officer defendants, they chose to bring a due process claim. And they sounded it under Brady. And when you look at the case law on whether or not a Brady claim can go forward, it's based on when the actual criminal case is invalidated. Well, that's what they just said to you, I don't know, four or five minutes ago. And you said, no, that's not the case. Well, invalidation under federal law is when it's called into question, or under heck, what they said was declared invalid by a state tribunal authorized to make such a determination. Right, which wasn't until the null process came. Or the grant of the new trial, which actually invalidated... No, if you go on forward with these, they're not saying that the charges are valid. They're saying that that's the result of that particular prior trial. But what the court has said in Wallace v. Cato, in Justice Scalia examining his own opinion in heck, he clearly said, at least with respect to Wallace v. Cato, that they rejected his claim that that case would stay until the resolution of the criminal action. They said the limitations occurs... They called that a principle that goes well beyond heck, that an action which would impute an anticipated future conviction cannot be brought until that conviction occurs and is set aside. Isn't it the same case if he's tried in the original indictment? I mean, if the case is set aside and then he's re-indicted, you've got a situation where you've got this old case, now you come back and say, wait a minute, you had some problems there. But isn't this the same case? But going forward, like what they said in Provincet, he's now armed with the information that he had, that he didn't have in the first case. Armed with information that the DNA was wrong. Well, also, when he moved for a new trial in this case, he clearly stated that he was aware of the... or in a motion to the court, which was filed on June 11, 2008, he cites to the information, specifically the statements that were withheld by the Baltimore Police Department officers, and moves for those statements to be excluded from his new retrial. So he had information, he was aware of those statements, and that date specifically was June 11, 2008. It's at the joint extract at 142 through 61. You really are confusing Hecht and what you need. There are two windows you have to go through to make this claim. You have to go through the Hecht window, and that is, therefore, he had to be out of jail, he can't be still serving his sentence and bringing this claim, and he has to show that the original proceedings were terminated in his favor. And that didn't happen until you get the null process. But in Provincet, what the court... You have a lot of other arguments. I don't know why you... Well, moving on, the other issue was the qualified immunity issue. Well, let me ask you one other. I'm still not sure who's arguing it, but it was the first issue in your brief, so maybe you're the one that's arguing it. It's about whether both the Baltimore City State Attorney's Office... That will be argued by Ms. McDonald. Okay. Before you leave the limitations question, can you show me where in the complaint... This is a 12B6 motion, so we're looking at the complaint. Right. Where I find when the statute started running. As to... Yes, it started running from the day of the new trial. Well... That's not my question. Where in the complaint... Where in the complaint... What is it you're relying on to establish that? To establish the date that he was granted a new trial? It's in the complaint, yes. The date that he was granted the new trial? That's in the complaint? That's in the complaint. You happen to know the... Oh, well, actually, that was included in our motion to dismiss. It was a public record that was incorporated into the motion to dismiss. So the court allowed that to come in because it was a public record and it was referenced. That's when the first one was... That's when the conviction was first reversed. That's correct. But does that establish when he knew that this information or this testimony was perjured? He says in the complaint that his attorney at trial was made aware of it, but once it was too late, and that's at paragraph 87, too late to use it in that case. And in the Court of Special Appeals opinion, with respect to his motion for a new trial, the court cites the five inconsistent statements that were given by Mr. Thompson and then also an additional inconsistent statement, which was the basis of the new trial, which was that he now was saying that none of this was true, that he testified. So it is established in the record? Yes, it is established that he had that information. At what point he at least learned? Correct. He knew at that point. But we don't know to what extent he did, and we do know that the Maryland courts and this court all thought that those arguments were fooey because they were reviewing it as we must in criminal cases, giving every benefit of the doubt to the government to prevail, correct? Correct. That's a wholly different burden than when you're starting off fresh and you have this evidence. I would agree. Let me make sure I understand a point you're making, at least in terms of the broadness of where you've gone with this. That is that under your scenario, a defendant in this situation, let's say he was awarded a new trial because the prosecutor's argument was bad. Correct. He gets a new trial, and that's when you say the statute of limitations start, even though all of that information that arose from the so-called violation still could be used in a new trial. Right, but he's armed with that information going forward. So because he has that information... He was armed with it from day one. Why would we wait for a new trial if the only question is he's armed with it? Because while the conviction's existing, heck applies. But once the conviction is invalidated by a new trial, which returns him to his pretrial prostitute, just like in Wallace, where he's being held over by judicial process, at that point he has the information. It doesn't impugn an existing conviction because there isn't one, and even going forward it wouldn't impugn the second conviction because he has the information going forward, which is what they said in Providence. And it's already impugned that information in the new trial. And under Brady, the vacator, the ruling, or the remedy, is vacator of the actual conviction. It doesn't mean that the state doesn't get to use that information going forward. The new trial, he has that information, and therefore the remedy for failure, the Sixth Amendment right for failure to produce that information is being cured. He has the information. It doesn't mean that the state doesn't get to use it. He just gets to use it for his purposes as well. And, Your Honors, I've gone over time. So as to the qualified immunity argument, we'll rest it on our papers. Okay. Ms. McDonald? Good morning. Okay, please, the Court. I'll be addressing the somewhat limited issue of the State's Attorney's Office and absolute prosecutorial immunity. The lower court properly dismissed the one count brought against the State's Attorney and Assistant State's Attorney, Brave. Is it called a Baltimore City State's Attorney? Is it Baltimore City State's Attorney? No. The office is the office of the State's Attorney. It is a constitutional officer created by the Maryland Constitution. Duties and responsibilities set forth preliminarily in the Constitution. Who pays? The city pays. Who pays the judgment that one arises? A judgment against the State's Attorney is paid by the State of Maryland. But the city pays the salary or pays the duties of the office? Correct. Who does this officer answer to? Does he go in and report to the state legislature on an annual basis or to the governor, or does he go and talk to the city council? Well, it's an interesting question. It seems pretty straightforward. He probably needs to know that answer. He is not subject to the authority control of the mayor. The mayor does not direct the policies of the State's Attorney. The city council. The city council does not either. They paid him. They do. They do. But what they do is determine the city is responsible for funding the budget. That is their specific responsibility. And that's true. Are you responsible to them? No. Well, why would you be responsible to the state? They don't have any money that you get in. Well, you have to be responsible to the state because you are a state constitutional officer. That's all well and good, but who's paying you is who you're really responsible to, isn't it? But the state would be paying if there is a judgment against you. And I would say you have to look at this in the backdrop. There are lots of state constitutional officers created under the Maryland Constitution. They are specifically charged with discharging responsibilities, and here the State's Attorney is charged with acting in the interest of the state, not of the city, not of the county, but the interest of the state in prosecuting all criminal prosecutions arising out of that particular jurisdiction. The authority, that is correct, but the authority of the office comes from the power of the state, not from the power of the city. Ultimately, the state, in its infinite creativity, found a way to make the city and the counties responsible for paying for the costs of supporting the State's Attorney and any assistants or deputy attorneys that they are authorized to employ and therefore to discharge their responsibilities. But if you take a look at both your case, the Nivens v. Gilchrist case, and the specific provisions that we have cited, which are both the Maryland Tort Claims Act and the payment provisions concerning payment of judgments under the state government article, there are two important things. First, that the Personnel Act defines the State's Attorney himself and any of the employees as state personnel. And the reason why this is significant is that state is agreeing that these entities are acting under the authority of the state such that the State of Maryland is waiving its sovereign immunity so that these individuals are not individually liable in tort and substituting the State's liability for those of the individuals. Could you waive this liability, this defense, if you wanted to? Is it a waivable defense, sovereign immunity? Sovereign immunity is waivable, but not by me. All right. By the General Assembly, and they have done so in limited circumstances. All right. Why are we worried about a defense in a 12B6 motion? Because sovereign immunity is an absolute defense. You can determine that based on the allegations made in the complaint? Absolutely, because what the individual Without consideration of matters outside the complaint? Only matters which are generally publicly available, such as statutes, other provisions. I would point the Court to two specific cases here. You have to establish it. You can only rely on statutes. To establish the sovereign immunity of the State's attorney, we're relying on the state constitution, cases interpreting these provisions, the provisions of the Maryland Tort Claims Act, the provisions of the state government article. This is two different claims. You have the State's attorney's office, I understand, and you have an individual State's attorney. Correct. And I thought you had made different arguments. We have, but let me put it this way. There is no such thing as the office of the State's attorney. There is no statute, no rule, no regulation, nothing that creates an office of the State's attorney. Constitutionally, the State's attorney is a constitutional officer and is empowered to hire staff, which they like to call themselves the office of the State's attorney. But it is not a legal entity capable of being sued. Just like the office of the city solicitor. That is correct. Or the office of the attorney general in some circumstances. Or the other analogy in Maryland law is the office of the sheriff. There is no sheriff's department, and we cite the cases for that in our pleadings. So what we recognize, though, what we acknowledge, is that that's a formality in some respects because the proper defendant would be the State's attorney or the State in this instance, to which there is 11th Amendment. Did the district court hold that the office had been created by statute or by Constitution? The district court didn't really address that. I thought they dealt with it. The basis for saying that sovereign immunity applies, it seems to me they gave one basis. That is, it was created by the State, so to speak. Well, that is true. That the position of State's attorney is created constitutionally. To me, at least the Supreme Court in passing says, okay, that's a reason, but that's not the only factor to consider. There are other things that can be considered here. And here, the district court didn't consider anything except how it was created. It didn't look at any of the other factors that might be involved here. Well... Wouldn't it be significant to know, I mean, at least from a district court's perspective, of who's paying for it and, you know, how it's run and who you report to? I mean, even if you come out your way... All of those things are... other than who created it. Which, do you not agree, that cannot be dispositive. Who created it cannot be dispositive, can it? Under your case law... Under HESS, which is the United States Supreme Court case law. Yes, and under Ford Motor Credit, Ford Motor Vehicle. That's not my case law. I'm not the 4th Circuit. I'm asking under HESS. The dispositive factor is, ultimately, is a judgment against an entity going to be paid from the State coffers. Is it dispositive as to who created it? Is it dispositive alone as to where it was created? Under HESS. No. And that's all the district court made a determination of here. It did not look at any other factors. Again, the district court looked at the other case law where there had been a fleshing out of some of those factors, which was both the Whitteson case and Doe v. Pocomoke City. But those are the factors in this case. And I would agree to the extent that those were not put forth in the motions in that way. I mean, you can't simply say, well, there are some cases with factors in it, but here it was created by the State in the case. You can't do that. I would suggest that cases of sister or colleague judges addressing the identical creation of a State's attorney, looking at the constitutional provisions, and looking at the payment provisions where that analysis is done in other cases certainly would be persuasive and things upon which the district court properly relied. But I don't know if he took judicial notice in those cases or he felt he was bound by those decisions or whatever, but there are factors here that were put forth, and he only made one determination that was created by the State. And in light of everything else that was argued with respect to the other controlling cases that specifically go through the more fleshed-out analysis, looking at not only that it is a constitutional office, what the functions of the office are, and ultimately the responsibility for payment, that that would be appropriate under these circumstances. And indeed, under your holding in Nivens, you don't look at the multitude of, say, the four factors test that was employed in cash. You look at the most important factor, which is ultimately who is responsible for paying. And in the Nivens case, you specifically follow the analysis that we have suggested directly applies here. You found that the North Carolina district attorney was responsible for prosecution on behalf of the State. That is absolutely true with respect to any of the Maryland State's attorneys in their respective counties under the Criminal Procedures Article Section 15-102. In Nivens, you found that the State's attorney is a State official. The cases are legion, both in Maryland courts and in the Federal District Court, that a State's attorney is a State official, and that is also supported by the provisions of the Tort Claims Act, State Government 12-101. Mr. Donald, I credit you not only as an excellent lawyer, but you talk really fast, which is also very important in making your point. But I still am simple-minded, so bear with me here. With respect to your argument against the State's attorney's office, I think what you do is principally rely on, and you made the argument below, that it's not an entity that can be sued under Maryland law because it isn't an entity in and of itself. You have a separate sovereign immunity argument about the individual State's attorney and about the State's attorney's office also, and that argument was never made originally. Is that not correct? That is not correct, Your Honor. Okay, where is it made? Okay, there is an argument about the nature of the State's attorney being subject to 11th Amendment immunity. That was put forward in the State's pleadings. What about the individual State's attorney? That's really what I'm concerned about. The prosecutorial immunity argument was not advanced in the motion to dismiss. So we would have to say on the face of this complaint that you're entitled to it because, as you quite properly, I think, acknowledged, that argument can be waived. Now, all it does is say the district court has to decide it in the first place. You haven't waived it for all time, but you waived it in front of us right now. And I'm a little confused as to whether you're asking the immunity argument, the sovereign immunity argument, or the prosecutorial immunity argument. Both, all. With respect to the assistant? Yes. The argument, there was no motion to dismiss filed on behalf of Assistant State's Attorney Brave. So there's not, neither one of them was made below with respect to him. In the motion to dismiss. Both, however, were asserted as affirmative defenses in the answer. And in the interests of one, sovereign immunity can be raised at any time. And to the extent that- Where do you get that? There are tons of cases. I see my time is up. May I finish answering your question? Sovereign immunity can be raised at any time? That is correct, Your Honor. In the Fourth Circuit case law, qualified immunity cannot. Qualified immunity can be waived if not properly raised. So it is not your position that you can waive sovereign immunity? I'm not talking about raising, waiving it for all time. I'm talking about waiving because at least with respect to the prosecutor, there are instances where you don't enjoy prosecutorial immunity, right? That is correct, Your Honor. Okay, well maybe I've misunderstood you. So let's just talk about the individual prosecutor here for a moment. What has been properly preserved with respect to immunity with respect to the prosecutor? Our response would be twofold. To the extent that he's sued in his official capacity, it would be a claim against the state, the state's attorney, and as such would be barred by Eleventh Amendment immunity. That issue was not briefed at the district court level but is set forth in the answer. That would be the same position with respect to absolute prosecutorial immunity for the conduct relative to the prosecutorial trial. But you recognize that if the prosecutor is acting as an investigator, he does not enjoy absolute prosecutorial immunity. That is correct. The two allegations are not false. How are we to know from this complaint? And what I would suggest to the court is that in the interest of judicial economy, certainly this could go back and we would again move for summary judgment on the issue of absolute prosecutorial immunity. Again, it has not been waived. It is set forth in the answer. And if you look at the two objections, we have not. This has solely been through 12B6. Correct. But what I would suggest the distinction is that absolute prosecutorial immunity in this case, it's very clear that everything the prosecutor is accused of doing in this case arose out of the prosecution, the failing to disclose exculpatory evidence. And the only two things that they have cited are specifically a request that the police re-interrogate Mr. Thompson. All of those things occurred while the trial was ongoing. And, indeed, there's a very good case that that was going to the question of whether or not you need to rehabilitate your witness, Mr. Thompson, whether you could. And that's, again, something that's – I think I got the answer to my question. We've gone way over. Thank you very much. Thank you. Let's hear from Mr. Curlett. Thank you. Mr. Abelson. Governor O'Donnell. Thank you. All right, we'll come down and re-counsel and then go into our next case. That's it.
judges: William B. Traxler, Jr., Diana Gribbon Motz, James A. Wynn, Jr.